UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW S. GILLETTE<br><br>Plaintiff<br><br>vs.<br><br>PATRICK R. DONAHOE,<br>POSTMASTER GENERAL OF<br>THE UNITED STATES,<br><br>Defendant | Civil Action – Law<br><br>The Honorable A. Richard Caputo<br><br>Jury Trial Demanded<br><br>No.: 3:12-cv-01852 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

*AND NOW*, comes the Plaintiff, by and through Counsel, Harry T. Coleman, Esquire and hereby files the instant Memorandum of Law in Opposition to Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment consistent with Local Rules 7.6 and 56.1 and submits the following:

I.

**INTRODUCTION**

Plaintiff, Matthew S. Gillette initiated this action against the United States Postal Service ("Postal Service") pursuant to Title VII.   (See Doc. 1.)

In order for this Court to focus on the disability discrimination claim, Plaintiff is hereby withdrawing his claim of age discrimination.

Despite the argument by the Defendant which focuses on the end result of the hiring process, Plaintiff Gillette has consistently maintained that the Waymart, Pennsylvania Postmaster position should never have gotten to the hiring process if the Defendant followed their own directives with regard to the Wilkes Barre, Pennsylvania plant closure when Mr. Gillette's request for a downgrade to the position when the Waymart Postmaster position was at the level EAS 16.   The Defendant Agency denied the request of the Plaintiff because of a technical error in their ability to post the position.   As will be discussed below, Mr. Reiss, on behalf of the Defendant, has admitted that the position of Postmaster of Waymart "was frozen at a level EAS 16" when the Plaintiff made his request for a downgrade.   This is consistent, according to the Affidavit of the Plaintiff of all positions being frozen in order the accommodate those displaced workers from the Wilkes Barre Plant.   It is the position of the Plaintiff that this was discrimination against him as the Defendant did not want an employee with his limitations to be placed in a position that had extensive physical demands.

Specifically, by failing to honor the Plaintiff's request for a downgrade in January, 2010, the Plaintiff was required to compete competitively for the

Waymart position.   This clearly put the Plaintiff at a disadvantage and the Defendants knew this would result.    It is for this reason that the Defendant's focused their efforts on the hiring process for the position that took place in May/June of 2010 but it was the actual January, 2010 denial of the Plaintiff's request for a downgrade that constituted the discrimination herein.

It is the position of the Plaintiff that he can establish a *prima facia* case on his disability discrimination claim and that the Defendant's Motion, at this early stage should be denied and the parties should proceed with discovery in a time frame as set by the Court.   In the alternative, it is submitted by the Plaintiff respectfully that there are factual disputes of record that prevent the Defendant from securing summary judgment as is discussed more fully below.

## II.

## STATEMENT OF FACTS

Despite the fact that the Defendant is seeking summary judgment, it should be noted that the Defendant has not filed a Short and Concise Statement of Material Facts that is mandated by Local Rule 56.1.

## III.

## <u>APPLICABLE LEGAL STANDARD</u>

A Motion to Dismiss is an appropriate means of challenging the legal sufficiency of the Complaint.  See, *e.g., Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir. 1987).   It is to be granted only where the Complaint fails to set forth facts stating "a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007).  See also *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed. 2d 868 (May 18, 2009) (citing *Twombly*, 550 U.S. at 555-57):

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.*   The Supreme Court has further explained that:

> [t]he plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.*

In *Fowler v. UPMC Shadyside,* the United States Court of Appeals for the Third Circuit described the Rule 12(b)(6) standard in light of *Twombly* and *Iqbal:*

> After *Iqbal*, it is clear that … all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially

4

> plausible.   This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'

578 F.3d 203, 210 (3d Cir. 2009).

Summary judgment is appropriate when, viewing the record in a light most favorable to a non-moving party, there is:

> no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a).   *Michaels v. New Jersey,* 222 F.3d 118, 121 (3d Cir. 2000).   Therefore, Rule 56:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).   In order to defeat a summary judgment, a non-moving party may not:

> rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way.

*El v. S.E. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007).

## IV.

## **ARGUMENT**

Initially, Plaintiff agrees that one bringing a Title VII claim must first exhaust his administrative remedies through the administrative process.

5

*Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir. 1997).   The subsequent lawsuit is limited to claims reasonably within the scope of the initial administrative charge.   *Barzanty v. Verizon Pa., Inc.,* 361 F.App'x. 411, 413-14 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

Looking at Mr. Gillette's Title VII claim, a disability discrimination claim is evaluated in light of the Americans with Disabilities Act ("ADA") and its amendments as well as the *McDonnell Douglas* burden shifting framework. *Shaner v. Scynthes,* 204, F.3d 494, 500 (3d Cir. 2000).

In order to prevail on his claim, Mr. Gillette must first establish a *prima facia* case of disability discrimination by showing the following:   (1) that he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the job with or without a reasonable accommodation; and (3) he was subjected to an adverse employment action as a result of discrimination.   See *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).   An individual is disabled under the ADA if he actually has, has a record of having, or is regarded as having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."   See 42 U.S.C. § 2102(2)(A)-(C).

6

Regulations define an impairment as "[a]ny physiological disorder, or condition ... affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory ... and endocrine." 29 C.F.R. § 1630.2(h)(1). The United States Supreme Court has indicated that major life activities are "those activities that are of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 197 (2002); see also, 29 C.F.R. § 1630.2(i) (defining major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.") The term "substantially limited" means that an individual is "[u]nable to perform a major life activity that the average person in the general population can perform" or "significantly restricted" in the performance of a major life activity when compared to an average person. 29 C.F.R. § 1630.2(j)(1)(i&ii).

For claims of discrimination based on circumstantial evidence, such as that presented in the instant matter, this Court must apply a burden-shifting test. *Shaner v. Synthes*, 204 F.3d 494, 500-01 (3d Cir. 2000); *Walton v. Mental Health Ass'n. of S.E.Pa.*, 168 F.3d 661, 667-8 (3d Cir. 1999).

Mr. Gillette readily accepts the initial burden of establishing a *prima facia* case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Walton*, 168 F.3d at 667-68. The Defendant, to shift the burden back to

Plaintiff, must show a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas Corp.,* 411 U.S. at 802; *Walton,* 168 F.3d at 668. The Plaintiff then bears the ultimate burden of demonstrating that the Defendants reasons are merely a pretext for discrimination. *Walton,* 168 F.3d at 668.

### 1. Plaintiff's Impairment is a Disability.

For the purpose of this Court's determination of the pending Motion to Dismiss, the Court is directed to the allegations in paragraph 34 of the Complaint which indicates the Plaintiff has a recognized physical disability.

As it concerns the summary judgment request by the Defendant, this Court can look to the Affidavit of Matthew Gillette filed of record simultaneously with this Memorandum of Law. Mr. Gillette has indicated that on August 18, 2006, he was involved in a head-on collision with a motor vehicle while operating a motorcycle. In addition to a fracture to his left thumb, multiple contusions, and injuries to his lower back, Mr. Gillette sustained a fracture to his left pelvis. Mr. Gillette missed a period of approximately three months from his employment. A medical summary was prepared in December of 2007 by Mr. Gillette's vocational expert, William E. Walker which summarized the medical treatment of Mr. Gillette and indicated that according to Dr. Gentilezza, the Plaintiff herein will require ongoing medical pain management. Dr. Gentilezza was of the opinion that

8

there was an aggravation of the Plaintiff's previous fractures at the T4-5 level.   Dr. Gentilezza prepared a cost summary with regard to Mr. Gillette and his need for future medical treatment.   This information is contained not only within the Affidavit of Mr. Gillette but also in the exhibits filed by the Plaintiff in opposition to the pending Motion for Summary Judgment.

The medical evidence which the Plaintiff has produced and will produce during the course of the discovery in this matter clearly reveals that the Plaintiff's disability is permanent and according to the Plaintiff's Affidavit, this has substantially limited one or more major life activities of the Plaintiff.

In order to prove a disability, the Plaintiff recognizes that he needs to satisfy a very difficult standard.   See *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 197 (stating that it is a "demanding standard for qualifying as disabled").

This is not a case in which the Plaintiff is presenting with situational difficulties but rather the Court is presented with a Plaintiff with documented disc injuries and a reasonable juror could conclude from the record that the Plaintiff's impairment is permanent as per Dr. Gentilezza and there will be a long-term impact upon Mr. Gillette.

The Plaintiff herein has filed an Affidavit of record in which he has stated that he continues to treat with his physicians for the injuries outlined

9

below.   This treatment continues up to and including the date of filing. (See Affidavit of Plaintiff at Plaintiff's Compilation of Evidence, Tab "C".)

According to the Affidavit of the Plaintiff filed simultaneously herewith, as well as the report of Walker Rehabilitation and Associates under date of December 27, 2007, the Plaintiff here was involved in a motor vehicle accident on August 18, 2006.   He was transported to Community Medical Center (hereinafter "CMC") where Dr. Eugene Chiavacci, the staff orthopaedic surgeon, opined the Plaintiff sustained multiple orthopaedic injuries including a fracture of the left inferior pubic ramis.   The Plaintiff subsequently came under the care of Dr. Kenneth Gentilezza of Northeast Rehabilitation Associates who opined that the Plaintiff suffered from the following injuries:   left superior and inferior pubic rami fractures; left hip pain and gait dysfunction; pelvic instability with left sacroiliac joint post traumatic arthropathy; lumbar facet syndrome; aggravation of a previous T4-5 compression fracture; post traumatic accelerated and advanced arthritis; and chronic pain with persistent gait dysfunction resulting in alteration of previously unrestricted social, recreational and vocational activities.   (See Walker Report, page 2 at Plaintiff's Compilation of Evidence Tab "A" in Opposition to Summary Judgment.)

Dr. Gentilezza also prepared a medical cost summary for the Plaintiff. (See Cost Summary at Plaintiff's Compilation of Evidence at Tab "B".)   The medical cost summary documents Dr. Gentilezza's medical opinion that for the life expectancy of Mr. Gillette who was born on February 23, 1964, that he will require follow up visits with a physical medicine and rehabilitation specialists;  interventional  pain  management  evaluations;  orthopaedic surgeon joint replacement; injections in the nature of a transforaminal epidural steroid injections to the lumbar area, sacroiliac joint and left hip injections.   The Plaintiff will also need lifetime medications and the benefit of diagnostic testing and physical and occupational therapy.   Most severely, Mr. Gillette is a candidate for a left total hip arthroplasty with a discectomy and possible fusion.

Based upon the record as it is presently constituted at this early stage, there are issues that need to be decided by a jury and the Court should not grant summary judgment to the Defendant on this prong of the burden shifting framework.

## 2.    Plaintiff Can Demonstrate a "Substantial Limitation" to a Major Life Activity.

For the Plaintiff to prevail at this level of his burden, the Plaintiff "must have an impairment that prevents or severely restricts [him] from doing

activities that are of central importance to most people's daily lives."   *Toyota Motor Mfg.* at 198; see also *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306-307 (3d Cir. 1999) ("To make that individualized assessment, we must begin by identifying the specific life activity or life activities that [the] ... disorder affected and then evaluate whether [his] condition 'substantially limits' those life activities.")   For the reasons that follow, Plaintiff has demonstrated that his condition "prevents" or "severely restricts" him from performing the asserted major life activity.

### A.   Bending.

Under the ADA Amendment Act of 2008, bending is one of the major life activities specifically listed as an example of a major life activity.   See Section 4(a) of the ADA Amendment Act of 2008, Pub.L.No. 110-325, 122 Stat. 3557.   Mr. Gillette's Affidavit clearly shows that he has significant difficulty with bending forward and sideways.   These limitations occur on a daily basis and cause excruciating pain.   As per the Plaintiff's Affidavit, bending is a critical component of his job duties at the time of the discrimination involved herein.   Mr. Gillette has also indicated by way of his Affidavit that he has significant limitations in bending as part of his everyday lifestyle choices.   It is respectfully submitted that the Plaintiff has been substantially limited in this major life activity.   Importantly, to the Court's

12

adjudication, there is no evidence of record contradicting the Plaintiff's position.

### B. **Lifting.**

There is little argument that can be advanced that lifting is not a major life activity now that Congress has specifically included lifting as a major life activity under the Americans With Disabilities Act Amendments. It is the position of Mr. Gillette that he has substantial limitations in his lifting as it relates to his major life activities. Mr. Gillette has indicated that his position at the time of the discrimination involved herein involved heaving lifting which is a maximum lifting amount of 70 pounds as post office regulations. Dr. Gentilezza has informed the Plaintiff to proceed in a careful and prudent manner in all measures of lifting and the Plaintiff has on occasion refrained from lifting in excess of 50 pounds. The Plaintiff's Affidavit indicates that lifting in his position of employment is always done with caution and usually done with assistance. Mr. Gillette's Affidavit reveals that he has had substantial limitations on his lifting abilities in all aspects of his everyday life. It is respectfully submitted that the Plaintiff has been substantially limited in this major life activity. Importantly, to the Court's adjudication, there is no evidence of record contradicting the Plaintiff's position.

C.    **Performing Manual Tasks.**

The Equal Employment Opportunity Commission ("EEOC") identified performing manual tasks when it first issued its regulations after the passage of the Americans With Disabilities Act ("ADA").   (See 29 C.F.R. § 1620.2(i).) It is the position of Mr. Gillette that he is substantially limited in performing manual tasks as set forth in his Affidavit and below.   Congress included performing manual tasks in the illustrative list of major life activities in its inaction of the ADA Amendments Act.

Mr. Gillette has indicated by way of Affidavit that significant limitations applied to his performance of manual tasks both in the work setting and in his lifestyle choices.   Specifically, the Plaintiff's Affidavit reveals that he has difficulty walking up and down stairs as part of his performance of manual tasks and he further has difficulty of walking short distances in the performance of similar tasks.   (See Affidavit of Plaintiff at Plaintiff's Compilation of Evidence, Tab "C".)

It is important to note with regard to the substantial limitations on Mr. Gillette's major life activities that he has obtained a handicapped placard from the Commonwealth of Pennsylvania.   His Affidavit has indicated as much and the Court is also directed to the Pennsylvania Department of

14

Transportation criteria as to a person whose disability would qualify one for a disability parking placard/plate. (See Affidavit of Plaintiff at Plaintiff's Compilation of Evidence, Tab "C" and PennDot Driver and Vehicle Services Publication as to defining a person with a disability for parking placard/plates at Tab "D".)

In further support of the Plaintiff's position with regard to the substantial limitation on his major life activities, this Court should look to form WH-380-E, Certification of Health Care Provider for Employee's Serious Health Condition for Complainant from Kenneth Gentilezza, MD dated September 17, 2010 which indicates the Plaintiff herein has a medical condition that resulted from the automobile accident of August 18, 2006 with a probable lifetime duration. The form indicates that the condition of the Plaintiff's severe low back and left hip pain causes an inability of the Plaintiff to lift, bend, stand, and walk without limitations. (See Form WH-380-E executed by Dr. Gentilezza at Plaintiff's Compilation of Evidence, Tab "E".)

### 3.   Plaintiff Has Identified an Adverse Employment Action that Resulted from Disability-Based Animus.

The focus of the Court's analysis should be solely focused on the Plaintiff's request for a downgrade to the position of Postmaster at Waymart when said position was posted at the level of an EAS16. Despite the

attempts by the Defendant to turn this Court's focus to the actual hiring process, Mr. Gillette has always maintained that the Defendant's denial of his request for the position at Waymart which was automatically his as a result of his transfer from the Wilkes Barre plant closing, was taken from him solely as a result of his disability when the government indicated that a "technical error" occurred in their ability to post the position.

Mr. Gillette has identified an adverse employment action and it is inconceivable that the defense would argue that they are entitled to summary judgment when a major factual issue as to the "technical error" needs to be weeded out so that credibility assessments can be made.

### 4.  The Postal Service Alleged Legitimate Reasons for its Actions Here are Pretextual.

The Post Office here has not intelligently articulated a rational reason for the "technical error" in failing to post the Waymart Postmaster position when it was at the EAS Level 16 which would automatically qualify and entitle Mr. Gillette to the position by virtue of his status as a displaced employee following the Wilkes Barre plant closure.   Whatever reason the Post Office may create is going to be entirely insufficient to explain away a "technical error" whose sole impact resulted in the loss of the Postmaster position of the Plaintiff at the Waymart Post Office.

16

The Defendant's request for Summary Judgment in this regard must be denied as the only inference one can get from a "technical error" would be pretext and a factual issue that needs not only to be developed by discovery but exposed in an evidentiary trial before this Court.

## V.

## **CONCLUSION**

For all the foregoing reasons and considering the standards which the Defendant is asking this Court to apply through its Motion to Dismiss and through its alternative request for Summary Judgment, it is respectfully requested for the reasons set forth above and the evidence produced at this early stage of the litigation by the Plaintiff, that the Motion of the Defendant be denied.

Dated:   March 29, 2013          Respectfully Submitted,

LAW OFFICES OF HARRY T. COLEMAN

By:_____
        Harry T. Coleman, Esquire
        Attorney Id. No. 49137
        41 North Main Street
        Carbondale, PA 18407
        (570) 282-7440

        *Attorney for Plaintiff*

17

## CERTIFICATE OF WORD COUNT

I, Harry T. Coleman, Esquire, counsel for the Plaintiff, Matthew S. Gillette, certify that this Memorandum of Law in Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment contains 3,584 words and complies with Local Rule 7.8.   In making this Certification, I have relied on the word count feature of the word processing software utilized in creating this Brief.

Dated:    March 29, 2013

LAW OFFICES OF HARRY T. COLEMAN

By: _____
Harry T. Coleman, Esquire
Attorney I.D. No. 49137
41 N. Main Street
3rd Floor, Suite 316
Carbondale, PA 18407
(570) 282-7440