# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW S. GILLETTE,

    Plaintiff,

    v.

PATRICK R. DONAHOE,

    Defendant.

CIVIL ACTION NO. 3:12-CV-1852

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant Patrick Donahoe, United States Postmaster General. (Doc. 6.) Because Gillette failed to exhaust his administrative remedies with respect to his retaliation claims, has not alleged facts sufficient to show that he is entitled to relief on his disability discrimination claim, and cannot recover punitive damages in a private suit brought under § 504 of the Rehabilitation Act of 1973, the Motion to Dismiss will be granted.

## I. Background

### A. Factual Allegations

The facts as alleged in the Complaint are as follows:

Plaintiff Matthew Gillette began working for the United States Postal Service ("USPS") in January 1989. (Doc. 1 at ¶ 8.) On September 21, 2009, USPS issued a Notice of Closure for the Wilkes-Barre, Pennsylvania plant. (*Id.* at ¶ 10.) At that time, Gillette had reached the position of "EAS-17 Supervisor Maintenance Operations." (*Id.* at ¶ 14.) Impacted employees from the Wilkes-Barre plant were given a list of vacant positions within the district that only they could pursue during the reduction in force. (*Id.* at ¶ 11.) They were also eligible for lateral moves within their pay grade or downgrades to positions at lower pay grades upon request. (*Id.* at ¶ 12.) In addition, they could request consideration for promotions but would have to apply competitively for such positions. (*Id.* at ¶ 13.)

In October 2009, USPS granted Gillette's request to detail in its customer service

sector. (Doc. 1 at ¶ 14.) Gillette's detail as Officer in Charge ("OIC") of the Waymart, Pennsylvania post office ran from November 11, 2009 until March 31, 2010. (*Id.* at ¶¶ 15–16.) On December 14, 2009, Gillette, having learned that the vacant position of Postmaster of the Waymart post office had been downgraded from EAS-18 to EAS-16, requested a downgrade so that he could be awarded the position. (*Id.* at ¶¶ 13, 17.) Daniel Reiss, Manager of Post Office Operations, informed Gillette that the position was not being posted at that time and ignored the request for downgrade. (*Id.* at ¶ 18.) Gilette, having received inconsistent information from USPS employees regarding the Waymart Postmaster position, submitted a request for downgrade and a request for consideration for a promotion for the position on January 8, 2010. (*Id.* at ¶ 19.) Soon thereafter, Reiss informed him that USPS "'was unable to find the position in the system in order to post it' because there had been a change in the EAS level" and that he would have to wait to apply for it until it was posted at a later date. (*Id.* at ¶¶ 20, 22.) Although Gillette believed at that time that Reiss was acting in good faith and would honor his requests by awarding him the Waymart Postmaster position when it was posted, Reiss changed his position to discriminate against Gillette by stating that the position was "frozen." (Doc. 1 at ¶¶ 21, 23.)

After his detail at the Waymart post office ended in March 2010, Gillette was granted a downgrade to the EAS-11 position of Postmaster at the South Canaan, Pennsylvania post office. (*Id.* at ¶ 25.) On May 4, 2010, the Waymart Postmaster position was posted. (*Id.* at ¶ 26.) On May 19, 2010, Gillette received notification that his application for the position had been received, but was informed on June 2, 2010 that USPS had decided to cancel the posting announcement. (*Id.* at ¶¶ 27–28.) He interpreted the later notice as similar to the previous technical difficulties USPS experienced with posting the position and expected that the position would be re-posted at a later date. (*Id.* at ¶¶ 28–29.) However, he learned in August 2010 that the Waymart Postmaster position had been filled. (*Id.* at ¶ 30.)

On September 24, 2010, Gillette realized that USPS would be unable to honor his requests regarding the Waymart Postmaster position in January 2010 and believed that the deception that had been perpetrated against him was solely due to his disability, and not his EAS level. (Doc. 1 at ¶ 31.) Gillette, who has a recognized physical disability, was qualified for the Waymart Postmaster position at all relevant times. (*Id.* at ¶¶ 32, 34.) The discrimination against Gillette was substantially motivated by a discriminatory animus based on Gillette's disability and Reiss's perception of him as disabled. (*Id*. at ¶ 36.)

**B.     Procedural History**

On September 14, 2010, Gillette contacted an EEOC counselor. (Doc. 1, Ex. A at 91.) On September 25, 2010, he completed a pre-counseling document in which he described his discrimination allegations as "permanent physical disabilities" and his retaliation allegations as "n/a." (*Id.* at 91–93.)

Informal efforts to resolve Gillette's concerns were unsuccessful, and he filed a formal EEOC complaint on December 24, 2010 in which he alleged disability discrimination. (*Id.* at 59–67.) Because he neither checked the box for retaliation nor alleged facts indicating that he was retaliated against, only his discrimination claim was investigated. (*Id.*) On June 5, 2012, an EEOC administrative judge determined that Gillette "failed to establish a prima facie case of disability discrimination because he failed to rebut the [USPS's] assertion that [Gillette], as a EAS-17 Postmaster does not qualify for a lateral assignment into a EAS-18 Postmaster's position." (Doc. 1, Ex. B at 6.)

On September 17, 2012, Gillette commenced the instant action against Donahoe, claiming retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and disability discrimination under § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. (Doc. 1.) He seeks declaratory relief,

a permanent injunction, damages, and attorney's fees and costs. (*Id.*) On February 19, 2013, the Court granted Donahoe's unopposed motion to dismiss Gillette's age discrimination claim. (Doc. 7.) Donahoe filed the instant motion on February 19, 2013. (Doc. 6.) The motion has been fully briefed and is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**III. Analysis**

**A. Count I – Retaliation**

In Count I of his complaint, Gillette claims that Donahoe violated Title VII by retaliating against him because of his age and disability. (Doc. 1 at ¶ 40.) Donahoe moves to dismiss these retaliation claims because Gillette failed to properly exhaust his administrative remedies with respect to them. (Doc. 8 at 6–9.)

Title VII requires that plaintiffs comply with certain procedural requirements prior to filing suit in federal court. *See* 42 U.S.C. § 2000e-5. Before filing a lawsuit, a plaintiff must exhaust his administrative remedies by filing a timely Charge of Discrimination with the EEOC. *Id.* at §§ 2000e-5(b), (e)(1), (f)(1). "The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) (citing *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001)). When the suit is filed, it "is limited to claims that are within the scope of the initial administrative charge." *Id.* (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)); *see also Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) ("[T]he scope of a resulting private action in the district court is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .") (internal quotation marks omitted). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol*, 82 F.3d at 1296.

In the Third Circuit, "failure to exhaust administrative remedies is a defense 'in the nature of statutes of limitation and does not affect the District Court's subject matter jurisdiction.' Nonexhaustion constitutes a possible ground for dismissal for failure to state a claim under [Rule] 12(b)(6)." *Phillips v. Sheraton Soc'y Hill*, 163 F. App'x 93, 93

(3d Cir. 2005) (quoting *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 2000)).[1]

In his EEOC Complaint of Discrimination, Gillette only alleged discrimination on the basis of his physical disability. (Doc. 1, Ex. A at 59.) He neither checked the box for retaliation nor alleged facts suggesting that he was subjected to retaliation. (*Id.* at 59–61.) Therefore, the EEOC only investigated a disability discrimination claim. (*Id.* at 38–58.) Based on this investigation, an EEOC administrative judge found that Gillette failed to establish a *prima facie* case of disability discrimination. (Doc. 1, Ex. B at 6.)

Based on the foregoing, Gillette's retaliation claims are not within the scope of his EEOC charge of discrimination. Accordingly, the Court finds that Gillette has failed to exhaust his administrative remedies as to his Title VII retaliation claims and will grant Donehoe's Motion to Dismiss Count I to the extent it alleges such claims.[2] Furthermore, the Court will dismiss these claims with prejudice because Gillette is time-barred from filing a new EEOC charge based on the facts at issue here. *See* 42 U.S.C. § 2000e–5(e) (requiring that a charge must be filed with the EEOC within 300 days after an "allegedly unlawful employment practice occurred.").

---

[1] Although "extraneous to the pleadings," the exhibits attached to Donahoe's Motion to Dismiss may properly be considered under Rule 12(b)(6) "'without converting the motion into one for summary judgment' because they are 'integral or explicitly relied upon in [the] complaint.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[2] Even if Gillette exhausted his administrative remedies with respect to his Title VII retaliation claims, the Court would still dismiss them because he has not alleged any facts to support them. To establish a *prima facie* retaliation case, Gillette must show that: (1) he engaged in activity protected by Title VII; (2) he was subjected to a materially adverse employment action; and (3) a causal link exists between the protected conduct and the employer's adverse action. *See Moore v. Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). Gillette's complaint contains no facts alleging that he engaged in activity protected by Title VII or that he was not selected as the Waymart Postmaster because he engaged in protected activity.

7

**B. Count III – Disability Discrimination**

    **1. Disability Discrimination**

Gillette alleges in Count III of his complaint that Donahoe violated § 504 of the RA by discriminating against him on account of his disability. (Doc. 1 at ¶ 46.) The RA forbids federal employers and employers who receive federal funds from discriminating against persons with disabilities in matters of hiring, placement, or advancement. *Shiring v. Runyon*, 90 F.3d 827, 830–31 (3d Cir. 1996). A *prima facie* case of disability discrimination under the RA requires a plaintiff to show that: (1) he has a disability; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he faced an adverse employment action due to his disability. *Id.* at 831. Donahoe argues that Gillette has failed to allege facts sufficient to support the second and third elements of his *prima facie* case.

        **a. Disability**

To satisfy the first element of his *prima facie* disability discrimination case (*i.e.*, show that he has a disability for purposes of the RA), Gillette must demonstrate that he has, has a record of having, or is regarded as having a physical or mental impairment that substantially limits one or more of his major life activities. 29 U.S.C. § 705(20)(B). For purposes of the RA, a physical or mental impairment is defined as:

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

34 C.F.R. § 104.3(j)(2)(i). A major life activity is one that is "of central importance to daily life," *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002), such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," 29 C.F.R. § 1630.2(i), or "sitting, standing, lifting [and]

8

reaching." *Kralik v. Durbin,* 130 F.3d 76, 78-79 (3d Cir. 1997) (quoting 29 C.F.R. § 1630).

Donahoe argues that Gillette has not alleged any facts that identify his physical disability or what major life activities are substantially limited by this disability. (Doc. 8 at 13.) He also contends that Gillette's complaint contains no facts that support his conclusion that Reiss perceived him as disabled. (*Id.*) Gillette avers in his complaint that he has "a recognized physical disability" and that the discrimination was "substantially motivated by . . . discriminatory animus based upon [Gillette's] physical disability and [Reiss's] perception of [Gillette] as disabled." (Doc. 1 at ¶¶ 34–35.) Although Gillette has alleged that he has "a recognized physical disability" of which Reiss was aware, he has failed to allege that his impairment substantially impacts one or more major life activities or constitutes a disability under the RA. *See Slade v. Hershey Co.*, No. 1:09-CV-541, 2009 WL 4794067, *4 (M.D. Pa. Dec. 8, 2009) ("[A] complaint must identify an impairment and allege that such impairment constitutes a disability under the ADA.") (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)).[3]

### b. Essential Functions

To satisfy the second element of his *prima facie* case, Gillette must show that "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998). Donahoe contends that other than the conclusory statement that "[Gillette] was qualified for the position as the Waymart Postmaster" (Doc. 1 at ¶ 32), Gillette has failed to allege facts establishing that he was qualified to perform

---

[3] Although *Fowler* involved a claim under the RA, while *Slade* pertained to a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 *et seq.*, "the protections found in the ADA and in the [RA] are interpreted similarly." *Doe v. Cnty. of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001).

the essential functions of the Waymart Postmaster position. (Doc. 8 at 14.) The Court agrees. Gillette has not stated his qualifications for the Waymart Postmaster position or alleged that he can perform the essential functions of that position with or without reasonable accommodation. *See Still v. Shenski*, No. 2:10-CV-1413, 2011 WL 2650180, *4 (W.D. Pa. July 6, 2011).

Based on the above infirmities, Gillette has not alleged sufficient facts to show that he is entitled to relief under the RA. The Court will thus grant Donahoe's Motion to Dismiss with respect to Gillette's disability discrimination claim in Count I. However, the Third Circuit has instructed that a district court must permit a curative amendment if a claim is vulnerable to a 12(b)(6) dismissal, unless amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 236 (3d Cir. 2008). Because it does not appear that amendment would be inequitable or futile with respect to this claim, the Court will grant Gillette leave to amend it.

### 2. Punitive Damages

Gillette also alleges in Count III that the discriminatory conduct against him "was extreme, outrageous, and is part of a pattern and practice of discrimination warranting exemplary and punitive damages." (Doc 1 at ¶ 49.) Donahoe contends that Gillette's request for punitive damages should be dismissed. (Doc. 8 at 15.) As the Supreme Court has expressly held that punitive damages are not recoverable in private suits brought under § 504 of the RA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), the Court will grant Donahoe's Motion to Dismiss with respect to Gillette's request for punitive damages in Count III. Furthermore, the Court will dismiss Gillette's request for punitive damages with prejudice and decline to grant leave to amend, as doing so would clearly clearly be futile in this matter.

## IV. Conclusion

For the above stated reasons, Donahoe's Motion to Dismiss will be granted. Gillette's Title VII retaliation claims (Count I) and his request for punitive damages under the RA (Count III) will be dismissed with prejudice. Gillette's disability discrimination claim (Count III) will be dismissed without prejudice and he will be permitted an opportunity to amend his complaint to state a disability discrimination claim consistent with this Memorandum within twenty-one days.

An appropriate order follows.


May 14, 2013  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge