**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MATTHEW S. GILLETTE,

    Plaintiff,

        v.

PATRICK R. DONAHOE, POSTMASTER GENERAL OF THE UNITED STATES,

    Defendant.

CIVIL ACTION NO. 3:12-cv-1852

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendant Patrick R. Donahoe ("Defendant")'s Motion for Summary Judgment (Doc. 25). Because Plaintiff Matthew S. Gillette ("Gillette") has failed to present a prima facie case of disability discrimination pursuant to the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, the Court will grant Defendant's motion.

## BACKGROUND[1]

On January 29, 2010 the United States Postal Service (USPS) Wilkes-Barre Processing and Distribution facility closed. (*Def.'s SMF*, ¶ 1; *Plf.'s Answer*, ¶ 1.) Plaintiff Matthew Gillette was employed at the Wilkes-Barre Processing and Distribution Facility as either a supervisor of distribution operations or maintenance operations, or maintenance manager. (*Def.'s SMF*, ¶ 4; *Plf.'s Answer*, ¶ 4.) Plaintiff Matthew Gillette and six (6) other Executive and Administrative (EAS) employees were impacted by the closing of the Wilkes-Barre facility such that they would be separated from the USPS under a reduction in force (RIF) if they did not find a new position within the USPS by January 29, 2010. (*Def.'s SMF*, ¶¶ 2-3; *Plf.'s Answer*, ¶¶ 2-3.)

---

[1] The facts are taken from the parties' statement of material facts, (Doc. 29, "*Def.'s SMF*"), answers to statement of facts, (Doc. 33, "*Plf.'s Answer*"), and the corresponding exhibits.

Barbara Kirchner, USPS district complement coordinator for the Central Pennsylvania District, was responsible for assisting impacted employees in getting training, finding developmental assignments with the USPS, and providing them with vacancies or positions that they might be interested in applying for. (*Def.'s SMF*, ¶ 5; *Plf.'s Answer*, ¶ 5.) She conducted a presentation on September 21 and 22, 2009 for impacted USPS employees, which Gillette attended. (*Def.'s SMF*, ¶ 6; *Plf.'s Answer*, ¶ 6.) At the presentation, impacted employees were informed that they would be considered for EAS vacancies under standard EAS selection policies, that employees were responsible for applying for higher level vacancies through eCareer (the online job application system for current USPS employees) and requesting noncompetitive consideration for same or lower level positions outside of eCareer. (*Def.'s SMF*, ¶ 7; *Plf.'s Answer*, ¶ 7.) As to promotions, Kirchner advised impacted employees that if they applied for a higher level EAS position, they would be required to compete competitively for such positions and to apply online through eCareer. (*Def.'s SMF*, ¶ 8; *Plf.'s Answer*, ¶ 8.) As to non-competitive requests, Kirchner advised impacted employees to prepare a cover letter to the selecting official requesting consideration, and that the selecting official could decline the non-competitive request, consider the non-competitive request, or ask the employee to compete along with other applicants for the position if the job is posted. (*Def.'s SMF*, ¶ 10; *Plf.'s Answer*, ¶ 10.)

Human resources maintains a list of vacant positions for all USPS employees, compiled using WebCOINS (a web-based complement information system), and Kirchner gave the impacted employees a list of such vacancies in the Central Pennsylvania District. (*Def.'s SMF*, ¶¶ 11-12; *Plf.'s Answer*, ¶¶ 11-12.) If a vacancy is listed on WebCOINS, this does not mean that the vacancy is posted on eCareer or that an employee can apply for that vacancy. (*Def.'s SMF*, ¶ 15; *Plf.'s Answer*, ¶ 15.) Vacancies in WebCOINS indicate an EAS level, but that EAS level may change because the EAS level of any position must

be validated by USPS headquarters before a position is posted in eCareer. (*Def.'s SMF*, ¶ 16; *Plf.'s Answer*, ¶ 16.)

Kirchner assisted Gillette in obtaining a developmental assignment because he had experience working in a processing and distribution facility but not in customer service. (*Def.'s SMF*, ¶ 18; *Plf.'s Answer*, ¶ 18.) Gillette requested detail in Waymart, and because the postmaster of the Waymart post office retired in 2009, there was a vacancy for the position. (*Def.'s SMF*, ¶¶ 19-20; *Plf.'s Answer*, ¶¶ 19-20.)

The parties disagree as to what the EAS level of the Waymart postmaster position was when the prior postmaster retired, as well as the EAS level listed in WebCOINS for that position. Defendant asserts that the EAS level was 18 in both instances. (*Def.'s SMF*, ¶¶ 21-22). On the other hand, Gillette asserts that when he sought the position, the EAS level was 16 (*Plf.'s Answer*, ¶ 21).

Gillette was an EAS level 17. (*Def.'s SMF*, ¶ 23; *Plf.'s Answer*, ¶ 23.) Kirchner worked with Daniel Reiss, Manager, Post Office Operations, in finding Gillette a developmental assignment. (*Kirchner Decl.*, ¶ 29, Doc. 29-1, R. 118.) From November 11, 2009 until January 30, 2010, Gillette served in a temporary training detail assignment as the officer in charge (OIC) at the Waymart post office. (*Def.'s SMF*, ¶ 24; *Plf.'s Answer*, ¶ 24.) As an OIC, Gillette performed the same duties of the postmaster. (*Kirchner Decl.* ¶ 34, Doc. 29-1, R. 118.) Gillette was able to perform all job duties of the OIC while at Waymart. (*Def.'s SMF*, ¶ 28; *Plf.'s Answer*, ¶ 28.) Reiss was Gillette's first level supervisor. (*Def.'s SMF*, ¶ 29; *Plf.'s Answer*, ¶ 29.)

To post a vacant position, the selecting official prepares and submits a job posting request on eCareer. (*Def.'s SMF*, ¶ 30; *Plf.'s Answer*, ¶ 30.) Once human resources receives a request to post such a position, human resources generates a PS form 150 to allow the position to be approved to post by the Eastern Area Office, located in Pittsburgh,

PA, as well as to allow the EAS level of the position can be validated by USPS headquarters. (*Def.'s SMF*, ¶ 31; *Plf.'s Answer*, ¶ 31.)  A PS form 150 is a computer generated form accessible to any USPS employee, where he or she can input the post office and position, the data for deliveries and revenues for that post office are automatically populated by computer, and the computer generates the EAS level. (*Def.'s SMF*, ¶¶ 36-37; *Plf.'s Answer*, ¶¶ 36-37.)  While a selecting official can send a PS form 150 to human resources, human resources always runs its own PS form 150 to ensure that the form contains the most current and accurate information. (*Def.'s SMF*, ¶ 32; *Plf.'s Answer*, ¶ 32.) Before a position can be offered or posted, USPS headquarters must validate a position's EAS level because the EAS level determines the salary of a position.  (*Def.'s SMF*, ¶ 33; *Plf.'s Answer*, ¶ 33.)  The current EAS level on the PS form 150 is irrelevant, and the important number is the new EAS level because that is what USPS headquarters evaluates in validating an EAS level  (*Def.'s SMF*, ¶¶ 39-40; *Plf.'s Answer*, ¶¶ 39-40.)

In the fall of 2009, the USPS was on a nationwide hiring freeze, the parameters of which were determined by USPS headquarters. (*Def.'s SMF*, ¶¶ 46-47; *Plf.'s Answer*, ¶¶ 46-47.) Because of the freeze, human resources could not place any position up for bid and could not fill any vacant position through promotions, downgrades, or lateral assignments. (*Def.'s SMF*, ¶ 48; *Plf.'s Answer*, ¶ 48.)  The Waymart position was vacant, but frozen due to the USPS nationwide hiring freeze. (*Def.'s SMF*, ¶ 49; *Plf.'s Answer*, ¶ 49.)  The parties disagree as to whether Reiss was required to select an EAS employee impacted by the Wilkes-Barre facility closing for the Waymart postmaster vacancy. Defendant asserts that he was not required to do so (*Def.'s SMF*, ¶ 52; *Kirchner Decl.* ¶ 85, Doc. 29-1, R.129).  On the other hand, Gillette contends that when he approached Reiss for the position, the freeze had not been lifted and the position was available to him as a

4

displaced Wilkes-Barre employee (*Plf.'s Answer*, ¶ 52).[2]  When the freeze was lifted, Reiss, the selecting official for the Waymart postmaster position, completed an eCareer job posting request in December 2009 so that the position could be posted. (*Def.'s SMF*, ¶ 51; *Plf.'s Answer*, ¶ 51.)  In January of 2010, human resources forwarded the PS form 150 and posting request to the Eastern Area Office, which approved posting the vacancy, and to USPS headquarters, which approved the position for an upgrade to an EAS level 18, effective January 30, 2010. (*Def.'s SMF*, ¶¶ 55-58; *Plf.'s Answer*, ¶¶ 55-58.)  Defendant asserts that prior to the Eastern Office approving the posting of the Waymart position and USPS headquarters validating the EAS level, Reiss could not fill the vacancy (*Def.'s SMF*, ¶ 60).  Gillette denies this assertion, stating that the position was frozen and available to him as of the time he sought it in January 2010 (*Plf.'s Answer*, ¶ 60).

On December 14, 2009, Gillette sent an email to Reiss requesting "an opportunity to interview for the vacant position, Postmaster Waymart 18472," and Reiss responded on December 15, 2009, advising that the Waymart position "will post as an EAS level 18" which would require an application through eCareer since it would be a promotion. (*Def.'s SMF*, ¶¶ 66-67; *Plf.'s Answer*, ¶¶ 66-67.)  On January 4, 2010, in response to an inquiry from Gillette about the Waymart position, Kirchner advised him that Reiss "received numerous requests from higher level Postmasters to be considered for a downgrade" but that Reiss was trying to assist him with placement in the Waymart position. (*Def.'s SMF*, ¶ 68; *Plf.'s Answer*, ¶ 68.)  Kirchner further advised Gillette that she did not know if the Waymart

---

[2]  Gillette relies on Ms. Kirchner's deposition testimony for this position.  Ms. Kirchner was asked, "[i]f a position is frozen and you have a person who is a displaced employee would that person have precedence to a particular position over someone who may be transferring in or laterally moving from another post?" to which Ms. Kirchner responded "[d]epending on the knowledge, skills, and ability and the level of the position." (*Kirchner Dep.*, Doc. 35-9, 12:15-23.)

5

vacancy would be "posted and closed" prior to his RIF date of January 29, 2010.  (*Def.'s SMF*, ¶ 70; *Plf.'s Answer*, ¶ 70.)  In a letter on January 8, 2010 Gillette requested consideration for the Waymart postmaster position. (*Def.'s SMF*, ¶ 75; *Plf.'s Answer*, ¶ 75.) Also in a letter dated January 8, 2014, Gillette requested noncompeteitive consideration for the postmaster position at South Canaan, advising that his primary request was for the vacant Waymart position.  (*Def.'s SMF*, ¶ 76; *Plf.'s Answer*, ¶ 76.)  On January 22, 2010, Gillette sent Reiss an email accepting the South Canaan postmaster position of an EAS 11 through voluntary downgrade, although he continued to be paid as an EAS level 17.  (*Def.'s SMF*, ¶¶ 79-80; *Plf.'s Answer*, ¶¶ 79-80.)

As to the Waymart postmaster position, on April 21, 2010, human resources sent the required paperwork to the Eastern Area Office for approval to post the Waymart postmaster vacancy,  it was approved on April 22, 2010, and the vacancy announcement issued on May 4, 2010.  (*Def.'s SMF*, ¶¶ 86-89; *Plf.'s Answer*, ¶¶ 86-89.)  Reiss had the option of selecting the Waymart postmaster by using the competitive or noncompetitive selection procedures.  (*Def.'s SMF*, ¶ 91; *Plf.'s Answer*, ¶ 91.)  Seven (7) employees applied for the Waymart position, three (3) of which held the required EAS level 18 pay grade at the time that they applied.  (*Def.'s SMF*, ¶¶ 92-93; *Plf.'s Answer*, ¶¶ 92-93.)  Reiss chose to make a non-competitive selection and did not consider the four applicants who did not hold an EAS level 18 or higher.  (*Def.'s SMF*, ¶¶ 96, 99; *Plf.'s Answer*, ¶¶ 96, 99.)  At this time, Gillette was not considered for the Waymart postmaster vacancy because he did not hold an EAS level of 18 or higher.  (*Def.'s SMF*, ¶ 101; *Plf.'s Answer*, ¶ 101.)

Gillette did not have any work restrictions while Reiss supervised him and Reiss never observed him perform his job duties. (*Def.'s SMF*, ¶¶ 117-118; *Plf.'s Answer*, ¶¶ 117-118.)  Reiss believed Gillette could perform all the duties and responsibilities of a postmaster because he performed all the duties and responsibilities of the OIC position.

(*Def.'s SMF*, ¶ 119; *Plf.'s Answer*, ¶ 119.)  No one at USPS stated that Gillette's "physical limitations were the reason [he was not] selected for the Waymart [postmaster] position." (*Def.'s SMF*, ¶ 126; *Plf.'s Answer*, ¶ 126.)

Based on the foregoing, Gillette filed a Complaint with the Equal Employment Opportunity Commission on December 24, 2010, alleging he was not selected for the Waymart postmaster due to his disability. (*Def.'s SMF*, ¶ 143; *Plf.'s Answer*, ¶ 143.)  Gillette did not allege a failure to accommodate claim in his EEOC complaint filed on December 24, 2010.  (*Def.'s SMF*, ¶¶ 143-145; *Plf.'s Answer*, ¶¶ 143-145.)  Following the closure of the Wilkes-Barre Processing and Distribution Facility, Gillette testified that he did not request an accommodation.  (*Def.'s SMF*, ¶ 146; *Plf.'s Answer*, ¶ 146.)

Gillette filed his Complaint in this action on September 17, 2012 (Doc. 1).  In the Court's Memorandum and Order dated May 14, 2013, Gillette's disability discrimination claim was dismissed without prejudice.  (Docs. 14 and 15.)  Gillette filed an Amended Complaint (Doc. 16) on May 31, 2013.

Following the completion of discovery, Defendant filed the instant motion for summary judgment (Doc. 25), brief in support (Doc. 28), and statement of facts (Doc. 29). Defendant's motion for summary judgment is fully briefed, and thus ripe for disposition.

### LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  A fact is material if

proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Denal Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57, 106 S. Ct. 2505. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110

S. Ct. 3177, 111 L. Ed. 2d 695 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505.

## ANALYSIS

Gillette claims that Defendant discriminated against him by failing to allow him to secure the position of postmaster at Waymart. In moving for summary judgment, Defendant asserts: (1) that Gillette has failed to establish a prima facie case of disability discrimination under the Rehabilitation Act; (2) alternatively, that the USPS has articulated a legitimate, non discriminatory reason for not considering Gillette for the Waymart position; and (3) that Gillette failed to exhaust his failure to accommodate claim. Because Gillette has failed to establish a prima facie case of disability discrimination, Defendant's motion for summary judgment will be granted.

The Third Circuit has acknowledged that "[w]hether a suit is filed under the Rehabilitation Act or under the [Americans with Disabilities Act], the substantive standards for determining liability are the same." *McDonald v. Com. of Pa., Dep't of Public Welfare, Polk Center*, 62 F.3d 92, 95 (3d Cir.1995). *See also Kendall v. Postmaster General of U.S.,* 543 F. App'x 141, 144 (3d Cir. 2013) (not

precedential)("Section 504 of the Rehabilitation Act incorporates by reference the substantive standards of the ADA.")(internal citation omitted).  The Americans with Disabilities Act (ADA) provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To make out a prima facie case under the ADA, the plaintiff must show that (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination. *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000).

With respect to Gillette's prima facie case, Defendant argues that Gillette cannot demonstrate that he has a record of disability; that he cannot proffer evidence for a juror to believe that he could meet the minimum EAS level of the Waymart postmaster position; and that he cannot establish any causal connection between his alleged disabilities and his failure to secure the Waymart postmaster position.  Based on the record, because Gillette cannot show that he suffered an adverse employment action as a result of discrimination, has cannot satisfy the third prong of his prima facie case. Therefore, as explained below, Defendant's motion for summary judgment will be granted. *See, e.g., Armour v. City of Gary*, 2:04CV32-PRC, 2006 WL 1660749 (N.D. Ind. June 14, 2006) (citing *See Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.2002)) ("If [plaintiff] fails to establish even a single prong of the prima facie case, the claim cannot survive summary judgment.").

As to the third prong of a prima facie case for disability discrimination, "[a]n adverse employment action is defined as 'a significant change in employment status,

10

such as, in hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Cunningham v. Novo Nordisk*, No. 12-6654, 2014 WL 1318390, at *8 (E.D. Pa. April 1, 2014)(citing *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir.1999).

Here, Gillette asserts that he suffered from an adverse employment action when he sought placement into the postmaster position in Waymart.[3] Defendant does not argue that this does not qualify as an adverse employment action. However, Gillette has failed to present any evidence suggesting that his unsuccessful attempt at placement in the Waymart postmaster position was caused by his disability.[4] Gillette asserts that "[i]n an underhanded manner and clearly evidencing discriminatory bias against the Plaintiff, Daniel Reiss himself in December 2009 specifically requested to upgrade the Waymart Postmaster position from an EAS level 16 to an EAS level 18 position so as to remove it from reach from the Plaintiff." (Doc. 34, 22.)

---

[3] Gillette's Amended Complaint also states that Defendant "refused to accommodate his disability." (*Am. Compl.*, Doc. 16, , ¶ 61.) However, as noted above, the parties agree that Gillette failed to allege failure to accommodate in his EEOC Complaint.

[4] Although Defendant asserts that Gillette cannot demonstrate that he has a "record of disability," Defendant concedes "[f]or the purposes of this summary judgment motion and only to not create a factual dispute," that "Gillette can establish he has physical impairments that substantially limit major life activities and he was regarded as disabled." (Doc. 28, 11.) As to the first prong of the prima facie case, whether a plaintiff is disabled, "[b]ecause the ADA lists the three subcategories in the disjunctive, a plaintiff must only show that he is disabled under one of the three subparts to establish the first element of a *prima facie* disability discrimination case." *Walsh v. Bank of Am.*, 320 F. App'x 131, 132-33 (3d Cir. 2009). Therefore, in conceding that Gillette satisfies the first two subparts of this disjunctive test, Defendant concedes that Gillette has satisfied the first element of his prima facie case.

Defendant concedes that on December 9, 2009, Reiss ran a PS form 150 for the Waymart position.  As noted above, the parties dispute whether the Waymart postition was at an EAS level 16 when Gillette requested consideration for the position.  However, this dispute does not present a genuine issue of material fact because even if the Waymart position was at an EAS level 16 during the relevant time frame, Gillette fails to sufficiently present evidence connecting Gillette's disability to his failed attempt to be placed in the Waymart postmaster position.  To bolster his claim of discrimination on this basis Gillette argues that "when Plaintiff was asking for the downgrade, Mr. Reiss was aware of his disabilities, despite his assertions to the contrary.  Rick Franco's Declaration establishes the Defendant was on notice of the Plaintiff's limitations and disability."  (Doc. 34, 23.)[5]  Fatally, apart from arguing that Reiss was aware of his disability, Gillette does not point to evidence suggesting that he was denied placement into this position because of his disability.  Instead, Gillette merely states that "[t]here is simply no plausible reason why Matthew Gillette was not granted the downgrade in the position as Waymart Postmaster."  (Doc. 34, 23).  This conclusory statement is insufficient to show that Gillette's failure to secure the Waymart postmaster position was the result of discrimination, and therefore, Gillette fails to satisfy the third prong of his prima facie case.  As such, Defendant's motion for summary judgment will be granted.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment will be granted.  An appropriate order follows.  Judgment will be entered in favor of Defendant and

---

[5]   The declaration states that Rick Franco was employed as supervisor of Matthew Gillette, was aware that Gillette was involved in a motor vehicle accident, and accommodated Gillette in his duties at the Wilkes-Barre Distribution plant.  (Doc. 35-13, ¶¶ 2-3.)

against Gillette on his disability discrimination claim.

    An appropriate Order follows.

| | |
|---|---|
| <u> July 30, 2014   </u><br>Date | <u>/s/ A. Richard Caputo   </u><br>A. Richard Caputo<br>United States District Judge |